UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:13-CR-01-GFVT-HAI-5 |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| GARY COOPER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 389), the Court considers reported violations of supervised release conditions by Defendant Gary Cooper.

**I.**

District Judge Van Tatenhove entered Judgment against Defendant in July 2014 after Defendant pleaded guilty to one count of conspiracy to distribute oxycodone. D.E. 283. This was a Class B felony due to an enhancement for a prior drug felony. D.E. 126. Defendant was initially sentenced to 168 months of imprisonment (concurrent with a state conviction) followed by six years of supervised release. D.E. 283 at 2-3. In February 2016, Defendant's sentence was reduced to 134 months. D.E. 333. In October 2019, Defendant's sentence was reduced to 100 months. D.E. 378. Defendant was released on December 1, 2020.

On January 15, 2021, the United States Probation Office ("USPO") collected a urine sample from Defendant that tested positive for oxycodone. D.E. 387. Although Defendant initially denied oxycodone use, he soon phoned his probation officer and admitted taking oxycodone three days prior to relieve stress. The USPO reported that Defendant had been

referred for substance abuse treatment, but treatment had not yet begun. The USPO requested no action, and Judge Van Tatenhove approved the request. *Id*.

On August 14, 2021, Defendant contacted his probation officer to report that he had been arrested for animal cruelty after leaving a puppy alone in a car. D.E. 388. The USPO requested that no action be taken, and Judge Van Tatenhove approved the request. *Id*.

**II.**

On November 10, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three Violations. The government ultimately moved to dismiss all three Violations in the Report. But they are briefly described here.

Violation #1 alleges a Grade B violation of the condition prohibiting commission of a crime and the condition prohibiting unlawful controlled-substance possession. According to the Report, Defendant was arrested in Newberry, South Carolina, on November 4 and charged with possession of drug paraphernalia and possession of methamphetamine, the latter of which is a felony.

Violation #2 alleges a Grade C violation of the condition that forbids leaving the judicial district without authorization. According to the Report, Defendant did not have his probation officer's permission to travel to South Carolina.

Violation #3 alleges a Grade C violation of the condition that forbids knowingly interacting with a person Defendant knows is a felon without permission. According to the Report, Defendant was arrested in the presence of William Coffey, who has multiple felonies. And he did not have permission from his probation officer to be with Coffey.

On December 13, 2022, the USPO released an Addendum to the Report. The Addendum charges a fourth Violation—a violation of the condition that prohibits committing another crime and the condition that prohibits unlawful controlled-substance possession. According to the Addendum,

> On December 9, 2022, Cooper was arrested and charged with the following in McCreary County District Court, Whitley City, Kentucky, Case No. 22-F-00172:
>
> 1) Trafficking in Controlled Substances, 1st Degree, 1st Offense, in violation of K.R.S. § 218A.1404
>
> 2) Fleeing or Evading Police, 2nd Degree (On Foot), in violation of K.R.S. § 520.100
>
> 3) Possession of Controlled Substances, 3rd Degree – Drug Unspecified, in violation of K.R.S. § 218A.1417
>
> 4) Carrying a Concealed Weapon, in violation of K.R.S. § 527.020
>
> 5) Drug Paraphernalia – Buy/Possess, in violation of K.R.S. § 218A.500(2)

According to the citation (unedited):

> U.S. Marshall's and McCreary Sheriff's deputies went to a location off of Mine 18 Rd in Revelo to locate and apprehend Gary Cooper for a federal warrant for his arrest. When Deputy Ridner and myself had arrived we located Cooper standing outside of his vehicle. Cooper had then looked over and noticed our marked patrol unit when he had took off running. Deputy Ridner, myself and a US Marshall started to run after Cooper. Cooper was given orders to stop where he had refused to comply. Cooper was chased approx. 60 yards before he had slipped and fell into the ditch at HWY 741. Cooper had in his front left pocket a zip lock bag that contained 26 grams of crystal like substance that appeared to be Methamphetamine. Cooper had laying under his person a zip lock bag that contained a smaller bag that had the same substance inside of it. He also had in the same zip lock bag several pills that where not identified. Cooper also contained in his front left jacket pocket a glass pipe that had residue inside of it. In Coopers front right jacket pocket he contained a single set of brass knuckles.

3

These state charges were ultimately dismissed.

Under USSG § 7B1.1(a)(1), "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense" qualifies as a Grade A violation. Due to the charge of first-degree drug trafficking, Violation #4 is a Grade A violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on February 23, 2023, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 392. At the initial appearance, the United States moved for interim detention; Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on March 21, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 395. Defendant initially stated he intended to stipulate to all four Violations. Upon questioning by the Court, Defendant contested the factual basis for some of the alleged conduct. The government ultimately moved to dismiss Violations #1, #2, and #3. Defendant admitted that he committed the trafficking crime described in Violation #4. He admitted being caught in possession of a distribution-sized quantity of methamphetamine. To be clear, Defendant admitted only the factual basis for the trafficking charge (Charge One) in Violation #4. This suffices for the government to establish Violation #4 under the standard of 18 U.S.C. § 3583(e).

### III.

The Court has evaluated the entire record, the Report and Addendum and accompanying documents, and the sentencing materials from the underlying Judgment in this District.

Additionally, the Court has considered all the section 3553 factors imported into the § 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute oxycodone, which was a Class B felony due to his prior drug-felony conviction. *See* 21 U.S.C. §§ 851, 846. A Class B conviction carries a three-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct (the trafficking component of Violation #4) would qualify as Grade A violation. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade A violation, Defendant's range, under the Revocation Table of Chapter Seven, is 33 to 41 months. USSG § 7B1.4(a). However, the three-year statutory cap renders the effective Guidelines Range 33 to 36 months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug-trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## IV.

At the final hearing, the government argued in favor of revocation with 33 months of incarceration, followed by two years of supervision. The defense did not argue against this recommendation.

The government found few positive factors in this case. The violation was Grade A. Defendant's criminal history category is VI. Defendant twice previously violated his release conditions, but no revocation was sought. His conviction was reduced twice. The drug trafficking underlying the conviction in this matter was committed while Defendant was on probation. Here, a person convicted of trafficking has trafficked while on supervised release. In other words, Defendant has been given prior grace, but he has returned to his prior criminal behavior and has severely violated the Court's trust. Yet the government does not consider Defendant a lost cause. The government gives him credit for admitting the violation and finds there have been times when he has "tried to make amends."

Concerning the recommended two years of supervision, the government explained that this shortened period would be "attainable" in Defendants mind. It would give him a goal—complete two years, and you are done. Neither side requested any additional release conditions.

The defense explained that Defendant does construction work. It is hard work, and Defendant's coworkers (who are often employed by subcontractors and can be unpredictable) often have drug addictions or criminal histories. The defense suggested that the condition forbidding contact with felons could be impossible for Defendant.

The Court explained that the condition requires that Defendant both know the person is a felon and lacks permission of his probation officer. The Court counseled Defendant that if he

discovers that a coworker is a felon, he need not immediately walk off the job. Instead, he should seek guidance from his probation officer as soon as possible.

After this condition was clarified, the defense expressed that the bottom-Guidelines penalty of 33 months plus two years of supervised release was a sufficient and reasonable penalty.

Defendant briefly addressed the Court. He apologized to the Court, his sister, his probation officer, and "everyone." He said he thought he had things under control, but he was mistaken. Defendant's sister was in the courtroom.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Neither party argued that this exception applies.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends accepting the government's recommended sentence of 33 months, followed by two years of supervised release.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, Defendant was caught selling oxycodone to a confidential source. Others, including relatives, were involved in this distribution ring. What is different here is that Defendant has escalated from oxycodone to methamphetamine. This is a more powerful drug that is made more dangerous because it is frequently laced with fentanyl.

The Court next considers Defendant's history and characteristics. Defendant has the highest criminal-history category and he has a history of committing crimes while on supervision.

The Court also considers the need to deter criminal conduct and protect the public. The two factors discussed above suggest a strong need to deter criminal conduct and protect the public. Defendant has returned again and again to drug use and drug trafficking. As such, he poses a danger to himself and others.

Another factor focuses on opportunities for education and treatment. Defendant likely needs treatment. It is not clear whether he is an addict or merely gets sucked into the drug lifestyle. The existing conditions are adequate to address his situation.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the

seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, while this is Defendant's first revocation, he was previously caught using oxycodone and no action was taken. The trust breach here is significant because he committed the serious (Class A) crime of drug trafficking while on supervision for a drug-trafficking conviction.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors. The imprisonment term of 33 months will protect the public and deter Defendant's criminal conduct. As he approaches age fifty, hopefully he will find the determination to stay sober and law-abiding. The two-year supervision period will give him an opportunity to prove himself.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon the government's motion, Violations #1, #2, and #3 be **DISMISSED**.
2. That, upon his stipulation, Defendant be found guilty of Charge One of Violation #4, first-degree trafficking in a controlled substance.
3. Revocation with a term of imprisonment of 33 months, followed by two years of supervised release under the existing conditions.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for

consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 24th day of March, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge